BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
Assistant United States Attorney

HIMALI PATEL
Certified Law Clerk

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5045
FAX: (408) 535-5066
jeff.nedrow@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YUJEN CHEN and<br>MARIA CHEN,<br><br>Defendants. | CASE NO. CR 13-00750-EJD<br><br>UNITED STATES' MEMORANDUM RE: RESTITUTION ORDER<br><br>Restitution Hearing Date: March 30, 2017<br><br>Time: 2:00 p.m.<br><br>The Hon. Edward J. Davila |

## I. INTRODUCTION

The United States hereby submits its updated and revised memorandum in support of its request for an order of restitution in this case. The government herein requests that the Court enter a final order of restitution in the revised total amount of $5,474,678.75 for the victims of the fraudulent scheme in this case. The government has updated this restitution figure as it has continued to receive information from victims in this case regarding losses sustained because of the Chens' criminal conduct. The

government further requests that the Court order that the defendants jointly and severally pay restitution to the specific victim finance companies and individual victims as described in Exhibit A, a summary chart which will be filed under seal with the Court under separate cover.

## II. FACTS AND PROCEDURAL STATUS

On January 30, 2017, the Court conducted a sentencing hearing for the defendants following their respective guilty pleas to counts of conspiracy to commit wire fraud and aggravated identity theft. At the conclusion of the sentencing hearing, the Court imposed a sentence of 75 months imprisonment as to defendant Yujen Chen and 64 months imprisonment as to defendant Maria Chen. The Court set the matter over for a further hearing on the question of restitution, and scheduled self-surrender dates for both defendants.

Since the date of the original sentencing hearing, the government has continued to correct and update its restitution assessment, and has received some additional information from at least one victim regarding losses incurred as a result of the defendants' criminal conduct in this case. These corrections and additions resulted in an increase in the final restitution figure to $5,474,678.75. The government has provided the defense with all documentation in support of its current restitution calculation. The government will confer with counsel and submit additional documents to the Court as needed where there is a factual dispute regarding the loss; however, it is the government's view that there is little genuine factual conflict regarding the amount of restitution owed in this case. The government submits that the only significant issue for the Court's consideration at the upcoming restitution hearing is whether the five individual victims on the restitution list who received payments from the Chens are ineligible for restitution because of their receipt of those nominal payments. That argument is without merit, as discussed below.

## III. ARGUMENT

### A. THE VICTIMS WHO RECEIVED NOMINAL PAYMENTS FROM THE CHENS ARE ENTITLED TO RESTITUTION

The heart of the fraudulent scheme in this case involved Yujen Chen and Maria Chen using the identities of third persons to fraudulently lease luxury vehicles, after which the Chens illegally exported those vehicles overseas for profit. Some of the third persons, or "straw lessees," received $500 payments from the Chens in exchange for their agreement to have their names used as straw lessees. Of

the individuals who received payments, five—Amy Liu, Peter Liu, Jane Chen, Yiping Chen, and Haixu Pan—are included on the government's restitution list, because these five individuals suffered considerable individual losses. As the Court is aware, these individual losses typically occurred when the individual victims made payments to settle civil litigation undertaken by the car leasing companies against the straw lessees.

Maria Chen argues that the straw lessees are "co-participants," as opposed to victims, because they received small amounts of money in token cash gifts for their services. Maria Chen claims that the straw lessees "consented to be 'victimized' by fraudulently signing leases for vehicles they intended to provide to the Chens", and that they therefore are ineligible for individual orders of restitution. Dkt. No. 57 at 8.

Maria Chen's argument is factually and legally baseless. Under the law, the straw lessees who received a nominal amount of money from the Chens are victims. The Mandatory Victims Restitution Act (MVRA) provides the following definition of the word "victim":

> [T]he term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). The straw lessees should be properly viewed as victims under this definition. Once the Chens defaulted on the loans and sold the vehicles overseas, the straw lessees were left with broken leases, no vehicle, and individual liability. The straw lessees were thus "directly and proximately harmed as a result of" the fraudulent scheme perpetrated by the Chens. Indeed, the reason the five listed individuals are included in the restitution calculation is that all five of them suffered significant financial losses as a result of agreeing to settle lawsuits or collection claims stemming from the Chens' fraudulent conduct.

The evidence in this case, and the defendants' admissions in their guilty pleas, plainly demonstrates that the Chens' core scheme involved the use of the straw lessees' identities to illegally obtain, ship, and sell vehicles abroad. There is no evidence that the five victims who received payments leased the vehicles with an awareness of the purpose of the larger scheme; to the contrary, it is clear that

Maria and Yujen Chen misrepresented their motives and intent to export the cars overseas.

The Second Circuit has ruled in favor of victim claims in circumstances quite similar to the fact of this case. In United States v. Ojeikere, the victims gave money to defendant Ojeikere believing that they were participating in a fraudulent moneymaking scheme in Nigeria. Ojeikere, 545 F.3d 220, 222 (2d Cir. 2008). However, Ojeikere was participating in (and convicted of) another fraudulent scheme: illegally taking money from these victims by making up a fictitious Nigerian scheme. Id. On appeal, Ojeikere argued that "the victims' hands are too dirty to claim restitution, since they all participated in what they thought was a fraudulent scheme to obtain money from Nigeria, and were in effect coconspirators." Id. In rejecting the defense argument, the Second Circuit noted that "the victims here were not involved in the offense of conviction, which was a fraudulent scheme to obtain money from them." Id. at 222-23. The court held that "restitution under MVRA may not be denied simply because the victim had greedy or dishonest motives, where those intentions were not in pari materia with those of the defendant." Id. at 223. Since the victims were not aware that they were involved in a scheme to lose their own money, the victims were not co-conspirators and were entitled to restitution. Id.

Following the logic of Ojeikere, Maria Chen cannot reasonably claim that the straw lessees were co-participants simply because they signed the leases with the intention of giving the vehicles to the Chens. Similar to the victims in Ojeikere, the straw lessees thought they were participating in a scheme to sign a lease (knowing that the Chens would be making payments on the car), instead of participating in a scheme to illegally obtain vehicles to sell overseas. As Ojeikere illustrates, victims cannot be co-conspirators if they are unaware of the fraudulent scheme perpetrated by the defendants. Maria Chen was convicted of illegally obtaining vehicles to sell overseas; the straw lessees were not charged with this conduct, and there is no persuasive evidence that they were informed of this scheme. As the evidence does not support the inference that the victim knew about the fraud perpetrated by the Chens involving the overseas export of the vehicles, they should be viewed as victims in this case, not co-participants.

In sum, as victims, Amy Liu, Peter Liu, Jane Chen, Yiping Chen, and Haixu Pan should be included in the restitution ordered by the Court as mandated by the MVRA.

**B. EVEN IF VIEWED AS CO-PARTICIPANTS, THE EXCEPTIONAL CIRCUMSTANCES APPLICABLE TO THIS CASE WARRANT AN ORDER OF RESTITUTION TO THE FIVE INDIVIDUAL VICTIMS UNDER THE MVRA**

Though the government stands by its view that Amy Liu, Peter Liu, Jane Chen, Yiping Chen, and Haixu Pan should not be viewed as co-participants, if the Court did view them in that capacity, the exceptional circumstances of this particular fraudulent scheme warrant their inclusion in the restitution order under the MVRA.

Under exceptional circumstances, a co-conspirator can recover restitution for crimes in which he or she had participated. U.S. v. Lazarenko, 624 F.3d 1247, 1251 (9th Cir. 2010). The exceptional circumstance rule applies in this case because of the following factors: (1) the straw lessees' limited role in the scheme; and (2) the evidence shows that several of the straw lessees believed they were doing a favor for the Chens, and acting at the request of the Chens, only to be defrauded and exploited by the Chens. These facts, along with the scale and scope of the fraud perpetrated by Chens, provide the Court with a basis for determining that exceptional circumstances apply in this case.

Ninth Circuit precedent on this question supports the availability of restitution to a victim/co-conspirator. In addition to Lazarenko, U.S. v. Sanga, 967 F.2d 1332, 1333 (9th Cir. 1992) is instructive. In Sanga, the defendant argued that because the victim participated in the conspiracy, she was not entitled to restitution. Sanga, 967 F.2d at 1333. Sanga was convicted of "a conspiracy 'to smuggle numerous illegal and unauthorized aliens into the United States.'" Id. at 1334. Sanga (the defendant) and Quinlob (the victim/co-conspirator) conspired to bring Quinlob illegally to Guam. Id. at 1334-35. Once Quinlob reached Guam, she was forced to work as a live-in maid at Sanga's house. Id. Sanga paid her below-market wages and stole her travel documents. Id. In holding that Quinlob was entitled to restitution despite her victim/co-conspirator status, the court stated:

> Quinlob was not named as a conspirator in the indictment. The overt acts of the conspiracy in which Quinlob was actively involved were limited solely to the mechanics of the conspiracy's successful attempt to smuggle her into Guam. Consistent with the object of the conspiracy identified in the indictment, however, Sanga stipulated in his plea agreement that he smuggled Quinlob in specifically for the purpose of employing her as his live-in maid.

Id. at 1334.

The government acknowledges that the Ninth Circuit reached a different conclusion in Lazarenko, finding that the victim/co-conspirator was not entitled to restitution. Lazarenko, 624 F.3d at 1252. In that case, victim/co-conspirator Kiritchenko participated in a money-laundering scheme with defendant Lazarenko, despite the fact that Lazarenko extorted him. Id. at 1250. The Court distinguished the facts in Lazarenko from Sanga. The court emphasized that Quinlob "had a very small role in the conspiracy; and that her persecution began after the completion of her small part of the conspiracy. Although she was technically a co-conspirator, her very small role was unconnected to the overall conspiracy; indeed, had she known the full extent of the conspiracy…she would not have entered the conspiracy." Id. at 1252. On the contrary, the court found that Kiritchenko "knowingly participated in the conspiracy even though he knew that his own past 'victimization' was the basis of the laundered money." Id. Additionally, Kiritchenko had "willingly participated in most of the conspiracy" and had "profited greatly from the overall criminal enterprise." Id.

The exceptional circumstances of this case justify restitution for the straw lessees even though they may be victims/co-participants. The facts of this case are much closer to Sanga than Lazarenko. Just like Quinlob, the victim in Sanga, the straw lessees were never indicted. Similar to Quinlob, their involvement in the fraudulent scheme was extremely narrow: they agreed to sign the leases knowing that the Chens would be using the vehicles instead of them, but without knowing that the main fraudulent scheme consisted of illegally obtaining vehicles to sell overseas. There is no evidence that the straw lessees were aware of the broader fraudulent scheme the Chens were perpetrating. It seems logical that the straw lessees would not have signed the vehicle leases if they had knowledge of the Chens' actual intent, given that the broken leases subjected the individual victims to personal liability for the vehicles. Unlike Kiritchenko, the victim/co-participant in Lazarenko, the straw lessees lost a significant amount of money and did not participate in most of the conspiracy. The Chens misrepresented their true intentions to the straw lessees and in the process victimized them.

In sum, even if the facts of this case illustrate that the straw lessees had reasons to question the legitimacy of their role as straw lessees, the evidence does not demonstrate that they were aware of the larger fraudulent scheme. The straw lessees were paid a nominal fee for very limited participation, and ended up losing money as a result of the Chens' criminal conduct. Because the facts of this situation

closely resemble the exceptional circumstances of Sanga and are markedly different from Lazarenko, the straw lessees should be entitled to restitution even if the Court views them as victims/co-participants.

**C. THE DEFENSE HAS NOT DEMONSTRATED THE NEED FOR AN EVIDENTIARY HEARING**

Maria Chen's request for an evidentiary hearing on this issue is equally unavailing, and should also be denied. There is no material factual conflict generated by her legal arguments that individual victims who received payments should not be eligible for restitution.

Whether to hold an evidentiary hearing is a matter of discretion with the trial court. Center Art Galleries-Hawaii, Inc. v. United States, 875 F.2d 747, 754 (9th Cir. 1989). Generally, an evidentiary hearing is only required if the papers submitted in support of and in opposition to the motion are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that there are contested issues of fact going to the validity of the search or to the resolution of other issues necessary to decide the motion. Center Art Galleries-Hawaii, 875 F.2d at 754; United States v. Batiste, 868 F.2d 1089, 1091 (9th Cir. 1989). Evidentiary hearings therefore only need to be held when "the allegations in the moving papers, including affidavits if any are filed, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." Cohen v. United States, 378 F.2d 751, 760-761 (9th Cir. 1967), cert. denied, 389 U.S. 897 (1967). If the affidavits and other evidence submitted by opposing parties show as a matter of law that the defendant is or is not entitled to relief, no evidentiary hearing is required. United States v. Irwin, 612 F.2d 1182, 1187 (9th Cir. 1980).

In this case, the government does not dispute that the five identified victims received small payments from the defendants in exchange for their agreement to permit their names to be used as straw lessors for cars. As there is no factual conflict regarding this question, and the defendant's request for an evidentiary hearing fails to identify any unresolved factual conflict necessary for the Court to determine whether these individuals are entitled to restitution as a matter of law. Accordingly, the government respectfully requests that the Court decline the defense request for an evidentiary hearing in this case.

The government acknowledges that Maria Chen, in her January 2017 filing, argues that she has not received adequate information to justify an order of restitution as to victims RS, JHS, and HL. The

government has provided information to the defense in support of the claims of these individuals. The government will confer with defense counsel prior to the March 30 hearing, and if no agreement is reached as to these victims, the government will submit separately the factual basis underlying the restitution claims for these victims.

The government stands ready to provide any additional information to the Court regarding the restitution calculation, which the Court deems helpful.

DATED: March 16, 2017

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

/s/
JEFFREY D. NEDROW
Assistant United States Attorney